ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **JORGE DE JESÚS RODRÍGUEZ**<br><br>Recurrente<br><br>v.<br><br>**ADMINISTRACIÓN DE REHABILITACIÓN VOCACIONAL**<br><br>Recurrida | KLRA202400032 | **REVISIÓN** procedente del Departamento del Trabajo y Recursos Humanos Administración de Rehabilitación Vocacional<br><br>Apelación Núm.:<br>**ARV-SJ-MM-22-209** |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de agosto de 2024.

Comparece ante nos, mediante recurso de *Revisión Judicial*, el señor Jorge de Jesús Rodríguez (Sr. de Jesús o Recurrente) y nos solicita que revoquemos la *Resolución Final* emitida por la Administración de Rehabilitación Vocacional (ARV).[1]

Por los fundamentos discutidos en adelante, confirmamos la *Resolución Final* de la ARV.

**I.**

Para el 2017, el Sr. de Jesús cursaba estudios en Quiropráctica en Life University en el estado de Georgia, EE. UU. Dichos estudios estuvieron auspiciados por la ARV, quien costeaba el 40% de la matrícula trimestral.[2]

El año académico de Life University se componía de cuatro (4) trimestres. Estos eran Verano (julio a septiembre), Otoño (octubre a diciembre), Invierno (enero a marzo) y Primavera (abril a junio).

---

[1] Apéndice de recurso de *Revisión Judicial*, Anejo I, págs. 1-8. Notificada y archivada en autos el 22 de diciembre de 2023.
[2] *Íd.*, Anejo X, pág. 67-70.

Durante sus estudios, el Sr. de Jesús se dio de baja o no aprobó varios de los cursos en los que estaba matriculado. En específico:[3]

| Trimestre | Curso no aprobado |
|---|---|
| Invierno 2017 | Se dio de baja del curso "*Orthopedic Diagnosis*". |
| Primavera 2017 | Se dio de baja de "*Orthopedic Diagnosis*" y obtuvo una F en "*Laboratories Studies*". |
| Verano 2017 | Obtuvo F en "*Orthopedic Diagnosis*" y en "*Pathology II*". No aprobó 9 de los 15 créditos matriculados. |
| Otoño 2017 | Obtuvo una F en "*Skeletal Radiology B*" y se dio de baja de "*Full Spine Technique*". No aprobó 4.5 de los 19.5 créditos matriculados. |
| Invierno 2018 | Obtuvo una F en "*Skeletal Radiology*" y en "*Radiology Report*". No aprobó 2.5 de los 15 créditos matriculados. |
| Otoño 2019 | Tuvo una baja de "*Activator Technique*". |
| Invierno 2020 | Se dio de baja de "*Advance RADD 4820*". |

El Sr. de Jesús fue asignado a un Consejero en Rehabilitación Vocacional (CRV) con quien debía consultar cualquier baja de matrícula. Además, el 21 de diciembre de 2016, el Sr. de Jesús fue orientado sobre las normativas de la ARV y de su programa de adiestramiento, firmando una *Certificación del Consumidor de Orientación Ofrecida Sobre las Disposiciones Generales para recibir Servicios de Adiestramiento a través de la Administración de Rehabilitación Vocacional (ARV)* (Certificación) atestando aquello.[4] Las cláusulas 14 y 15 de dicha Certificación disponen que:

14. Fui orientado de que se me interrumpirá el servicio de adiestramiento y servicios relacionados (manutención y transportación, libros y materiales de adiestramiento), **si me doy de baja o fracaso en una o**

---

[3] *Íd.*, Anejo IX, págs. 59-66
[4] *Íd.*, Anejo X, págs. 67-70.

**más asignaturas durante la sesión académica sin causas justificadas**.[5]

15. Si fracaso, me doy de baja o apruebo con D una asignatura de concentración se justificará reevaluar con mi CRV mi meta de empleo.[6]

A consecuencia de su desempeño académico, falta de comunicación y transparencia con su CRV y no remitir evidencia de notas y progreso académico, la ARV interrumpió el auspicio de adiestramiento al Sr. de Jesús para el trimestre de Verano 2017. La *Resolución Final* dispuso:

Aunque los servicios al [Sr. de Jesús] se interrumpieron en el año 2017, este no realizó gestión alguna en el año 2018 para que se restauraran los servicios. El 29 de enero de 2018, su [CRV] le envió correos electrónicos donde expresaba que hacían varios meses que no sabía de él, por lo que se habían interrumpido los servicios.[7]

El Sr. de Jesús admitió que no envió las notas del trimestre anterior (Otoño 2017).[8] Así las cosas, el 18 de diciembre de 2018, su CRV le remitió un correo electrónico donde le informó que hacía mucho tiempo que no tenía contacto con él, que le gustaría saber de él y le preguntó si completó sus estudios. El 13 de octubre de 2020, su CRV le informó, nuevamente mediante correo electrónico, que había recibido las transcripciones que éste le remitió y le explicó que los servicios de la ARV estaban interrumpidos por no cumplir con el progreso académico.[9]

Ante la interrupción de los servicios de la ARV, el 15 de julio de 2022, el Sr. de Jesús presentó una apelación, titulada *Querella*, ante la ARV para que revisara la suspensión de servicios y pagara los gastos que se obligaron a sufragar desde el Verano 2017 hasta el Verano 2020.[10] Pese que la interrupción de servicio se dio en el

---

[5] *Íd.*, pág. 69. (Énfasis nuestro).
[6] *Íd.*
[7] *Íd.*, Anejo I, pág. 3.
[8] *Íd.*, Anejo VIII, pág. 57.
[9] *Íd.*, Anejo I, pág. 3.
[10] *Íd.*, Anejo 2, págs. 9-12.

2017, no fue hasta el 15 de julio de 2022 que el Sr. de Jesús cuestionó la determinación de la ARV.

Durante el proceso administrativo, la ARV presentó varias comunicaciones e informes entre el Sr. de Jesús y su CRV. Esto incluyó comunicaciones directas con el Sr. de Jesús, como comunicaciones con sus parientes. En dichas comunicaciones, la CRV proveyó información detallando la suspensión de servicios, el deber del Sr. de Jesús de tramitar sus transcripciones y progreso académico y señalamientos sobre su incumplimiento con estos deberes.[11] En una comunicación fechada el 28 de febrero de 2017, el Sr. de Jesús reconoció expresamente que "me di de baja de Orthopedic. Sé el reglamento de que[,] si me doy de baja, pierdo la ayuda".[12]

El 18 de diciembre de 2022, y luego de celebrar una vista administrativa, el licenciado Luis Benjamín Méndez Méndez, oficial examinador de la ARV, emitió la *Resolución Final* de la cual se recurre. Luego de hacer una determinación de hechos, el oficial examinador declaró No Ha Lugar a la apelación presentada por el Sr. de Jesús. Concluyó que el Sr. de Jesús fue debidamente notificado y orientado sobre el contenido de la Normativa 2016-04 y de la ARV 110. Además, determinó conforme la prueba presentada que el Sr. de Jesús no aprobó cursos, envió notas tardíamente y se dio de baja de cursos, sin informar u obtener la aprobación de su CRV. Dicho incumplimiento impidió que su CRV pudiera someter al comité apropiado la solicitud de aprobación de auspicio de los trimestres subsiguientes. Por lo tanto, la solicitud del Sr. de Jesús de que se reembolsen los gastos en que incurrió para terminar su carrera era jurídicamente improcedente.

---

[11] Apéndice de *Alegato de la ARV*, págs. 32-53.
[12] *Íd.*, pág. 53.

Inconforme con dicha determinación, el 22 de enero de 2024, el Sr. de Jesús presentó el recurso de *Revisión Judicial* ante nuestra consideración. En dicha comparecencia, presentó los siguientes señalamientos de error:

**PRIMER ERROR: ERR[Ó] EL HONORABLE FORO ADMINISTRATIVO AL NO CONSIDERAR LOS INCUMPLIMIENTOS DE LA ARV CON SU PROPIA POLÍTICA PÚBLICA Y CONSIDERAR CORRECTA Y VÁLIDA LA INTERRUPCIÓN DE SERVICIOS REALIZADA EN SUMMER 2017, A[U]N CUANDO ESTA NO FUE NOTIFICADA, EN CLARA VIOLACIÓN DEL DEBIDO PROCESO DE LEY.**

**SEGUNDO ERROR: ERR[Ó] EL HONORABLE FORO ADMINISTRATIVO AL CONCLUIR QUE EL APELANTE NO ESTABLECIÓ ANTE LA ARV QUE LAS BAJAS EN LOS CURSOS[,] ASÍ COMO LAS MALAS CALIFICACIONES OBEDECIERAN A COMPLICACIONES DE SU CONDICIÓN O CAUSAS JUSTIFICADAS.**

**II.**

**A.**

El Artículo 4.006 (c) de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, (4 LPRA sec. 24y (c)), faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. Los organismos administrativos merecen la mayor deferencia judicial, puesto que estos tienen el conocimiento especializado sobre los asuntos que les han sido delegados. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012). Al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Íd*. Todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo cual la parte que las impugne debe producir suficiente evidencia para derrotarla. *Íd*.

Las facultades adjudicativas de una agencia están regidas por la LPAU, *supra*, y por la jurisprudencia aplicable. La Sección 3.1 de

la LPAU, *Íd.*, requiere que las agencias fundamenten sus resoluciones con determinaciones de hecho y conclusiones de derecho. Estas determinaciones deben reflejar que se consideraron y resolvieron los conflictos de prueba y, además, deben describir tanto los hechos probados como los rechazados. *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 265 (2007). Por lo tanto, la facultad revisora de los tribunales está limitada a determinar: (1) que el remedio concedido por la agencia fuese el apropiado; (2) si las determinaciones de hecho estuvieron basadas en evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta. LPAU, *supra*, Sec. 4.5.

Sobre nuestra facultad revisora, el Tribunal Supremo ha expresado que:

> **[L]as determinaciones de hecho se deben sostener si se fundamentan en evidencia sustancial que surja de la totalidad del expediente administrativo**. Mientras, la deferencia antes mencionada **no se extiende de manera automática a las conclusiones de derecho** emitidas por la agencia, ya que estas serán revisables en todos sus aspectos por el tribunal. **Esto es, que el tribunal las puede revisar sin sujeción a norma o criterio alguno**.
>
> *Hernández Feliciano v. Mun. Quebradillas, supra*, pág. 115. (citas omitidas) (Énfasis nuestro).

"[L]os foros apelativos debemos diferenciar entre asuntos de interpretación estatutaria, en la que los tribunales son especialistas, y los asuntos propios de la discreción o la pericia administrativa". *Íd.*, pág. 116. Al revisar las determinaciones de hechos, los tribunales solo pueden sustituir su criterio por el de la agencia cuando las determinaciones no están fundamentadas en evidencia sustancial. "Evidencia sustancial es 'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión'". *Empresas Ferrer v. A.R.Pe.*, *supra*, pág. 266 (citando a *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 615

(2006)). La parte que impugne una determinación "tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial". *Otero v. Toyota*, 163 DPR 716, 728 (2005).

Los tribunales les deben menor deferencia a las conclusiones de derecho de las agencias. *Hernández Feliciano v. Mun. Quebradillas*, *supra*, pág. 115. Aun así, la interpretación judicial del derecho no constituye una sustitución automática de las conclusiones de derechos de una agencia. *Íd*. En otras palabras, la deferencia disminuida no trata de una revisión *de novo*. El criterio administrativo solo debe ser descartado cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

**B.**

El 10 de junio de 2000, la Asamblea Legislativa aprobó la Ley de Rehabilitación Vocacional de Puerto Rico, Ley Núm. 97-2000, 18 LPRA sec. 1064 *et seq.* (Ley Núm. 97), con el propósito de "evaluar, planificar, desarrollar y proveer servicios de rehabilitación a personas con impedimentos para que pudieran prepararse y entrar a una actividad de empleo o lograr una vida independiente". *Íd.*, Exposición de Motivos. La Ley Núm. 97 dispuso que, para lograr sus propósitos, la ARV estará adscrito al Departamento de Trabajo. Además, la ARV tendrá la facultad de "[d]esarrollar aquellos programas, facilidades y servicios que sean necesarios para lograr los propósitos establecidos por ley", "[t]omar las medidas administrativas que sean necesarias para el funcionamiento de las leyes o planes estatales de rehabilitación vocacional y para cumplir con las condiciones que sean necesarias para obtener los mayores beneficios de las leyes federales", "[l]levar a cabo o auspiciar actividades para el desarrollo del personal" y "[a]doptar, enmendar

y derogar reglas y reglamentos para regir las normas de sus actividades en general y para ejercer y desempeñar los poderes y deberes que por ley se le conceden". *Íd.*, Artículo 5 (a), (c), (h) y (i).

Uno de los programas desarrollados por la ARV es el auspicio de adiestramiento, en coordinación con un CRV para adelantar las metas de empleo del solicitante/consumidor. Para solicitar el apoyo de este servicio, el consumidor debe primero aprobar, en conjunto con la ARV, un Plan Individualizado para Empleo (PIPE). El PIPE cubre un periodo específico y su aprobación es indispensable para que la ARV provea apoyo o auspicio del adiestramiento.

Relevante a este programa es la Comunicación Normativa Núm. 2016-04, de 14 de julio de 2015, que establece el Procedimiento para Recomendar el Servicio de Adiestramiento (Normativa 2016-04). La Normativa 2016-04 dispone claramente que "[t]odo consumidor que solicite a la ARV que le auspicie el servicio de adiestramiento en sus diferentes categorías, tiene que cumplir con lo dispuesto en este procedimiento". *Íd.*, pág. 3. Más adelante, dispone que "[e]l consumidor presentará evidencia de la carga académica por semestre, trimestre o cuatrimestre, de acuerdo a la institución en donde fue aceptado". *Íd.*, pág. 6. Además, establece el deber del consumidor a "aprobar los cursos en que está matriculado y mantener un promedio general no menor que el mínimo requerido por la institución donde estudia para continuar recibiendo el auspicio del adiestramiento y otros servicios relacionados con el adiestramiento". *Íd.* Finalmente, crea un requisito indispensable por parte del consumidor de "someter el informe de calificaciones oficial al terminar cada sesión académica acordada con el CRV". *Íd.*, pág. 7. Para esto, el consumidor tendrá treinta (30) días a partir de culminar el término académico. *Íd.*

El incumplimiento con las disposiciones de la Normativa 2016-04 resultará en la suspensión del auspicio de adiestramiento por parte de la ARV. Esta dispone claramente que:

> **La ARV podrá evaluar la continuación de los servicios de adiestramiento cuando el consumidor no cumple con lo establecido en la Sección II de las Disposiciones Generales, debido a causas justificadas, relacionadas a las limitaciones funcionales de su condición física o mental.** El CRV utilizará los recursos de los consultores médicos y psiquiátricos y discutirá con el nivel de supervisión regional las situaciones en que sea necesario para continuar auspiciando dichos servicios.

*Íd.*, pág. 9. (Énfasis nuestro).

También dispone que "[l]a ARV no asumirá responsabilidad de pago **por deudas contraídas por el consumidor antes de la aprobación del [PIPE]**". *Íd.*, pág. 4. (Énfasis nuestro). El PIPE debe ser trabajado en conjunto con el CRV asignado, por lo que el consumidor tiene un deber de mantener a su CRV informado de, entre otras cosas, darse de baja de cualquier curso y su progreso académico. *Íd.*, pág. 9. El consumidor debe aprobar la carga de créditos en la cual se matriculó y documentar en el expediente de servicios las causas o razones por las cuales no aprobó sus cursos. *Íd.*, pág. 10. Dichas responsabilidades también son aplicables a los parientes o tutor asignado del consumidor. Finalmente, dispone de manera categórica que "**[s]e interrumpirá el servicio de adiestramiento y servicios auxiliares** (manutención, transportación, libros y materiales de adiestramiento) **si el consumidor se da de baja o fracasa en una o más asignaturas durante una sesión académica, sin justa causa**". *Íd.* (Énfasis nuestro).

En resumen, la Normativa 2016-04 establece las condiciones para que la ARV auspicie el adiestramiento de un consumidor. A su vez, también dispone los deberes y responsabilidades que tiene un consumidor para continuar recibiendo el auspicio y apoyo de la

ARV. Esencial para este servicio, el consumidor debe mantenerse en comunicación con su CRV, coordinar su matrícula con este funcionario, notificar y enviar sus transcripciones de créditos y aprobar los cursos en los que se ha matriculado. Finalmente, la Normativa 2016-04 establece las consecuencias del incumplimiento con lo ahí dispuesto, incluyendo la suspensión del servicio cuando no exista justa causa para el incumplimiento. Justa causa, según la Normativa 2016-04, son aquellas causas relacionadas con las limitaciones funcionales de la condición física o mental del consumidor.

**III.**

Con el derecho aplicable esbozado, nos encontramos en posición para resolver las controversias presentadas en el recurso de *Revisión Judicial* presentado ante nos. Por estar relacionados con la justa causa por la suspensión del servicio y el cumplimiento con el debido proceso de ley, atenderemos los errores señalados en conjunto. Luego de analizar los escritos de las partes, los exhibits presentados ante el oficial examinador y la *Resolución Final*, es forzoso concluir que no se cometieron los errores.

Como cuestión de umbral, quedó incontrovertido que el Sr. de Jesús fue orientado y adiestrado sobre las expectativas, responsabilidades y deberes con las cuales debía cumplir para mantener el auspicio de su adiestramiento. En específico, atestó en la Certificación, que estaba consciente y que fue orientado de estos deberes. Además, en sus comunicaciones con su CRV, el Sr. de Jesús fue advertido de no haber presentado su transcripción de créditos, ni haberse comunicado con su CRV sobre su progreso académico. En sus respuestas a los correos electrónicos de su CRV, aceptó que no había sometido la información requerida y estaba consciente de las consecuencias de no hacerlo.

La Normativa 2016-04 dispone claramente que el incumplimiento con sus disposiciones conllevará la suspensión del servicio de auspicio. Además, dispone que la ARV no será responsable por las deudas contraídas antes de aprobarse el PIPE para el periodo para el cual se solicita el auspicio. Siendo la comunicación periódica y coordinación con el CRV asignado, un requisito indispensable para la aprobación del PIPE, procede la suspensión del servicio ante el incumplimiento del consumidor.

En el caso del Sr. de Jesús, este incumplió con sus deberes y no mantuvo a su CRV informado de su progreso académico. Además, el Sr. de Jesús no proveyó justa causa para sus incumplimientos con su CRV ni sobre su incumplimiento con las responsabilidades académicas. Alegó en su escrito de *Revisión Judicial* que la ARV erró al concluir que las bajas y malas calificaciones no obedecieron a complicaciones de su condición o causas contempladas por la Normativa 2016-04. En cuanto a este señalamiento, destacamos que no se presume la justa causa para el incumplimiento con las responsabilidades esbozadas en la Normativa 2016-04. El Sr. de Jesús nunca proveyó justificaciones para sus bajas y malas calificaciones, salvo excusas generalizadas como "[el curso] requiere mucho tiempo de estudio, comparado con las otras clases que estoy tomando".[13] Destacamos que dicha justificación se dio luego de darse de baja del curso en contravención a las disposiciones de la Normativa 2016-04.

En resumen, el Sr. de Jesús tenía conocimiento de sus deberes para continuar con el servicio de auspicio que le proveía la ARV. No obstante, incumplió con estas responsabilidades. El Sr. de Jesús tuvo trimestres en los que no presentó un PIPE aprobado. Ante estos incumplimientos, forzoso es concluir que la ARV no es

---

[13] *Íd.*, pág. 52.

responsable por las deudas contraídas en estos términos. Entendiendo que la determinación de la ARV fue razonable conforme los hechos y reiterados incumplimientos del Sr. de Jesús con la Normativa 2016-04, no vemos razón para revocar la *Resolución Final.* En consecuencia, se confirma.

**IV**.

Por los fundamentos esbozados, confirmamos la *Resolución Final* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones